UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

THE BANK OF NEW YORK, in its capacity as    :
Indenture Trustee of the NextCard Credit Card    :
Master Note Trust,    :
   :
                 Interpleader Plaintiff,    :          06 Civ. 13388 (CSH)
   :
        -against-    :
   :
FIRST MILLENNIUM, INC., MILLENNIUM    :      MEMORANDUM OPINION
PARTNERS, L.P., RMK ADVANTAGE FUND,    :           AND ORDER
and FEDERAL DEPOSIT INSURANCE    :
CORPORATION,    :
   :
                 Interpleader Defendants.    :

---------------------------------------------------------------- x

HAIGHT, Senior District Judge:

       In this interpleader action, a group of investors and the Federal Deposit Insurance

Corporation ("FDIC") assert competing claims to funds held by The Bank of New York ("BNY").

BNY holds those funds—which currently total about $90 million—in its role as trustee of the

NextCard Credit Card Master Note Trust ("NextCard"), a trust that was established by NextBank,

N.A. ("NextBank") as part of a securitization transaction.  The investors, First Millennium, Inc.,

Millennium Partners, L.P., and RMK Advantage Fund, claim they are entitled to the funds because

they hold asset-backed notes issued by NextCard that have matured and become due and payable,

but have not been paid.  The FDIC claims that it is entitled to funds held by BNY based on its rights

as the receiver of NextBank.

       The FDIC presently moves to transfer this action to the United States District Court for the

District of Columbia.  For the reasons set forth below, the FDIC's motion is denied.

## I.  BACKGROUND

**A.      The Securitization Transaction**

This action has its genesis in a securitization transaction undertaken by NextBank, a national banking association that issued consumer credit cards.  In basic terms, NextBank "created a trust, transferred its receivables to this trust, ordered the trust to sell notes to investors, and used the proceeds to pay merchants for charges by credit card holders"; the trust then used the receivables to repay the investors.  *Bank of New York v. FDIC*, 453 F. Supp. 2d 82, 85-87 (D.D.C. 2006).  This securitization transaction was executed through a master indenture agreement and related supplements (the "Indenture").  The Indenture established a trust, NextCard, which held NextBank's receivables.  The trust sold asset-backed notes (the "Notes") to investors (the "Noteholders"), including First Millennium, Inc., Millennium Partners, L.P., and RMK Advantage Fund.[1]  The trust offered four classes of notes (Classes A, B, C, D) with differing levels of risk—from Class A, the lowest risk, to Class D, the highest risk.  Higher risk notes offered higher interest rates.  BNY acts as Indenture Trustee of the trust and  represents the interests of the Noteholders.  The Indenture allows BNY to hold and control collateral funds from NextCard under certain circumstances.

On February 7, 2002, the FDIC was appointed as NextBank's receiver because "NextBank's undercapitalization and practice of extending credit to subprime borrowers had put the bank at risk for failure."  *Bank of New York v. FDIC*, 453 F. Supp. 2d 82, 85 (D.D.C. 2006).  The FDIC eventually closed the credit card accounts, and credit card holders paid down their existing balances.

---

[1] First Millennium, Inc. is a New York corporation with an office in New York City. Millennium Partners, L.P. is a Cayman Islands limited partnership registered as a foreign limited partnership in New York with an office in New York City.  Millennium Partners, L.P.'s general partner is a citizen of Delaware. RMK Advantage Fund is a Tennessee limited partnership with its principal place of business in Memphis, Tennessee.

Class A and B Noteholders were fully repaid principal and interest.  Class C and D Noteholders continued to receive interest payments, but Class C Noteholders were repaid only half their principal and Class D Noteholders were not repaid any principal.  *Id.* at 91.  The current dispute involves Class C and Class D Noteholders' attempts to recover principal funds.

**B.      The D.C. Conversion Suit ("*NextBank I*")**

After becoming NextBank's receiver, the FDIC opted to disregard an ipso facto clause in the Indenture (which triggered early amortization based on NextBank's receivership), and maintained that it was entitled to do so under the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA").  The Noteholders contended that the FDIC had improperly deprived them of funds to which they were entitled.  In October 2002, the Noteholders presented their claims to the FDIC under the administrative claims process required by FIRREA, and the FDIC largely denied those claims.

Subsequently, BNY commenced suit against the FDIC on June 5, 2003 in the United States District Court of the District of Columbia (the "D.C. Court"), seeking a judgment in favor of BNY (on behalf of the Noteholders) for conversion of funds.[2]  That action involved several claims and counterclaims; however, Count Two was dismissed, and all other claims and counterclaims were resolved through settlement except for Count Six, a claim for conversion related to the FDIC's failure to recognize the ipso facto clause in the Indenture.  On September 27, 2006, Judge Huvelle of the D.C. Court granted judgment on Count Six in favor of the FDIC, finding that the ipso facto clause was void and unenforceable under FIRREA.  *Bank of New York v. FDIC*, 453 F. Supp. 2d 82

---

[2] Under a venue provision in FIRREA, BNY was required to file this challenge to the FDIC's denial of its administrative claims in the D.C. Court or in the District of Arizona (the district where NextBank's principal place of business was located).  *See* 12 U.S.C. § 1821(d)(6)(A).

(D.D.C. 2006) ("*NextBank I*").  BNY appealed the judgment on October 27, 2006, and that appeal

is currently pending before the D.C. Circuit.

**C.       The New York Interpleader Action**

BNY commenced this interpleader action on November 16, 2006 after facing threats of

litigation based on competing claims to funds it held.  The Noteholders had instructed BNY to

withhold certain funds from the FDIC, contending that those funds were the property of the

Noteholders based on the early amortization of the Notes.[3]  After BNY informed the FDIC of the

Noteholders' instructions, the FDIC threatened to sue BNY if the funds were not remitted to the

FDIC—as the FDIC contended was required under *NextBank I*.  When informed of the FDIC's

threat, the Noteholders stated that they would seek to hold BNY liable for any loss of funds if BNY

complied with the FDIC's demand.  As a result of these litigation threats based on competing claims

to the funds, BNY commenced the present interpleader action in New York state court.  On the

following day, the FDIC filed an action in the D.C. Court ("*NextBank II*") alleging that the New

York interpleader action was an improper attempt to relitigate issues that had already been decided

in *NextBank I*, and seeking an injunction against such relitigation.[4]

On or about November 20, 2006, the Noteholders filed a motion for summary judgment in

the New York state court interpleader action.  The FDIC then removed the interpleader action to

federal court in the Southern District of New York on November 21, 2006.  On December 7, 2006,

this Court extended *sine die* the FDIC's time to oppose the Noteholders' motion and to move to

---

[3] The Noteholders contended that early amortization based on the ipso facto clause was not completely foreclosed by *NextBank I* because that decision dealt with the FDIC's powers under FIRREA, not NextCard's obligations to honor the ipso facto clause.

[4] *NextBank II* is described in greater detail *infra*, in Section I.D.

dismiss or answer BNY's complaint.  On December 21, 2006, this Court granted a limited stay of

the interpleader action until Judge Huvelle's decision in *NextBank II*.  This Court concluded that

considerations related to the "proper and efficient and prompt administration of justice" justified a

stay until Judge Huvelle determined whether claims in the interpleader action had already been

decided by *NextBank I*.

**D.     The D.C. Injunction Action ("*NextBank II*")**

As noted earlier, the FDIC filed an action in the D.C. Court on November 17, 2006 alleging

that claims in the New York interpleader action had already been decided in *NextBank I*, and seeking

an injunction against relitigation of those issues.

On January 29, 2007, Judge Huvelle issued a decision granting the FDIC's motion for

judgment.  *FDIC v. Bank of New York*, 2007 WL 214402 (D.D.C. Jan. 29, 2007) ("*NextBank II*").

The D.C. Court held that *NextBank I* had already determined that FIRREA barred enforcement of

the ipso facto clause against not just the FDIC, but also NextCard.  *Id.* at *13.  Judge Huvelle

explained: "Because this Court decided in *NextBank I* that the Master Indenture's ipso facto clause

was void, and therefore unenforceable by any party, and that the FDIC is excused from making

accelerated payments to the Trust, there can be no basis for arguing that the Trust should make

accelerated payments to the Noteholders.  Therefore, collateral estoppel forecloses the Noteholders'

present theory of entitlement to the NextBank receivables." *Id.*   The D.C. Court ruled that the

Noteholders could not block monthly distribution payments of "transferor interest" to the FDIC, and

the court enjoined BNY and the Noteholders from "relitigating the issue of whether early

amortization under the Master Indenture's ipso facto clause is enforceable." *Id.* at *16.  Thus, the

D.C. Court enjoined the Noteholders from seeking to enforce the ipso facto clause in any manner in

this interpleader action.

However, the D.C. Court also noted that the Noteholders' claim based on the maturity of the Notes was "not before [the D.C.] Court" and that "[t]o the extent that this alternative claim has been raised in the interpleader, it may present new issues and [the D.C.] Court may not enjoin future litigation regarding that claim." *Id.* at *12 n.7, *15.

On February 28, 2007, BNY noticed its appeal of Judge Huvelle's order and judgment in *NextBank II*.  That appeal is also pending.

**E.      Current Procedural Posture of the Interpleader Action**

On February 16, 2007, the FDIC filed a motion to transfer this interpleader action to the D.C. Court.  The FDIC argues that: (1) the D.C. Court is the proper venue for the action based on venue and jurisdiction provisions in FIRREA, (2) the D.C. Court has personal jurisdiction over the Noteholders, and (3) the interests of justice, trial efficiency, and Judge Huvelle's familiarity with the case justify transfer to the D.C. Court.

On March 8, 2007, the Noteholders filed a First Amended Answer to the Interpleader Complaint.  Consistent with Judge Huvelle's January 29, 2007 opinion and order, the Noteholders no longer assert entitlement to the funds based on the ipso facto clause; rather, the Noteholders argue they are entitled to the funds because the Notes have become due and payable under their express terms.[5]

The FDIC has not yet filed an answer to the interpleader complaint.

---

[5] The Noteholders hold Notes that were issued in 2000 and 2001.  The Series 2000-1 Notes became due and payable on December 15, 2006, while the Series 2001-1 Notes became due and payable on April 15, 2007.

## II.  DISCUSSION

### A.    Standard of Review on a Motion to Transfer Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The objectives of Section 1404(a) are "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations omitted).

If jurisdiction and venue are proper in the alternative forum, courts consider factors of convenience and fairness, including: "(1) the locus of the operative facts; (2) convenience of the parties; (3) the convenience of the witnesses; (4) the location of relevant documents and relative ease of proof; (5) the relative means of the parties; (6) the availability of process to compel attendance of unwilling witnesses; (7) a forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances."  *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 477 (S.D.N.Y. 2006).  In performing the analysis, the district court should "give due deference to the plaintiff's choice of forum which should not be disturbed unless the balance of convenience and justice weigh heavily in favor of defendant's forum."  *Citigroup, Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y.2000).  The party moving for a change of venue bears the burden of clearly establishing that transfer is appropriate.  *Id.*

### B.    FIRREA's Venue and Jurisdiction Provisions

The FDIC contends that the Southern District of New York is an improper venue for this action because FIRREA requires actions against the FDIC as receiver to be brought in the United

7

States District Court for the District of Columbia, or in the district where the principal place of business of the bank in receivership is located.[6]  However, the FIRREA provisions cited by the FDIC are not applicable here because in essence the case involves claims *by* the FDIC, not *against* it, with respect to assets of NextCard held by BNY.

The FDIC cites two provisions from FIRREA.  First, 12 U.S.C. § 1821(d)(6)(A) provides:

> Before the end of the 60-day period [after the FDIC's disallowance of an administrative claim], the claimant may request administrative review of the claim . . . or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

Furthermore, 12 U.S.C. § 1821(d)(13)(D) provides:

> (D) Limitation on judicial review
>
> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
> (I) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

The first provision, 12 U.S.C. § 1821 (d)(6)(A), is clearly inapplicable here because it only applies to judicial review of the FDIC's denial of administrative claims brought against the FDIC. This case—unlike *NextBank I*—involves no claims *against* the FDIC, much less the FDIC's administrative denial of such claims.  Thus, Section 1821(d)(6)(A) does not apply.

The second provision, 12 U.S.C. § 1821(d)(13)(D), if read literally, could suggest that "any

---

[6] In this case, NextBank's principal place of business was located in Arizona.

claim relating to any act or omission" of the FDIC must be brought in the D.C. Court (or in the

district within which the bank's principal place of business is located).  But, when read in the overall

context of FIRREA's administrative claims process, it is clear that "FIRREA's jurisdictional

limitations apply only to *creditors* bringing claims against the FDIC, not to *debtors* being sued by

the FDIC."  *FDIC v. Wrapwell Corp.*, 922 F. Supp. 913, 918 (S.D.N.Y. 1996) (emphasis in

original).[7]  In other words, 12 U.S.C. § 1821(d)(13)(D) only applies when a creditor brings a claim

against the FDIC (1) for the assets of a bank for which the FDIC has been appointed receiver, or (2)

relating to the acts or omissions of that bank or the FDIC.

BNY brought this interpleader action in response to a threat of litigation by the FDIC against

BNY.  Thus, although the action relates to an "act" of the FDIC, BNY is not a creditor bringing a

claim against the FDIC.  Rather, the FDIC claims it is entitled to funds held by BNY.

The FDIC claims that the jurisdictional limitations in FIRREA apply because "the

Noteholders are would-be creditors bringing claims against the FDIC Receiver," as "the Noteholders

are seeking funds that belong to the FDIC Receiver as the Transferor Interest."  FDIC's Reply Br.

---

[7] *See In re Cont'l Fin. Res., Inc.*, 154 B.R. 385 (D. Mass.1993), where the court
explained: "An examination of the FIRREA administrative claims process suggests, however,
that even in the face of the provision cited by the FDIC [Section 1821(d)(13)(D)], FIRREA
applies only to claims against the FDIC, and not to the FDIC's claims against its debtors.  This
examination reflects the fact that 12 U.S.C. § 1821(d)(13)(D)(I) does not exist in isolation, but is
embedded within a complex statutory framework.  The language of FIRREA repeatedly refers to
the FDIC's creditors and yet omits any reference to its debtors, indicating that FIRREA was
intended to apply only to *creditors*' claims.  For example, consistent with its provision mandating
the disallowance of untimely claims, FIRREA requires that creditors be notified to present their
claims through the claims process; yet, FIRREA fails to require the same notice to debtors that
might challenge the FDIC's claims against them.  The fact that FIRREA does not even afford
debtors adequate opportunity to avail themselves of the claims process reinforces the notion that
the statute was never meant to apply to them."  *Id.* at 388 (citations and internal quotations
omitted).

at 5.  It is true that the Noteholders are acting as creditors, not debtors.  But the Noteholders are seeking assets of NextCard currently held by BNY—*not* assets of NextBank held by the FDIC; and the Noteholders' maturity claim does not relate to any act or omission of the FDIC.  The FDIC's contention that the Noteholders are really seeking "funds that belong to the FDIC Receiver as the Transferor Interest" assumes the very issue to be decided in this interpleader.

Because the FDIC and the Noteholders seek funds of NextCard held by BNY and because the interpleader action does not involve claims *against* the FDIC, I conclude that the jurisdictional limitations in FIRREA do not mandate that this interpleader action be brought in the District of Columbia or Arizona.  However, I must still consider the appropriateness of a transfer of this case to the D.C. Court under § 1404(a).

**C.      Personal Jurisdiction Over the Noteholders**

This action cannot be transferred to the D.C. Court unless that court has personal jurisdiction over the Noteholders.  *See, e.g., Volkswagon de Mexico, S.A. v. Germanischer Lloyd*, 768 F. Supp. 1023, 1028-29 (S.D.N.Y. 1991).  The Noteholders do not have an office or employees in the District of Columbia, nor do they own property there.  However, the FDIC argues that the D.C. Court has personal jurisdiction over the Noteholders because they directed their agent, BNY, to litigate *NextBank I* in the District of Columbia.

In analyzing personal jurisdiction over a non-resident defendant, a court must determine whether jurisdiction is authorized by the state's long-arm statute, and whether such jurisdiction is consistent with due process.  *See, e.g., Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158,

165 (2d Cir. 2005).[8]   The District of Columbia long-arm statute provides that "[a] District of Columbia court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim for relief arising from the person's transacting any business in the District of Columbia." D.C. Code § 13-423(a)(1).  When jurisdiction is based on this subsection, "only a claim for relief arising from acts enumerated in [the long-arm statute] may be asserted."  D.C. Code § 13-423(b).  In other words, "Section 13-423(b) bars any claims unrelated to the particular transaction carried out in the District of Columbia upon which personal jurisdiction allegedly is based: The claim itself must have arisen from the business transacted in the District or there is no jurisdiction." *Novak-Canzeri v. Saud*, 864 F. Supp. 203, 206 (D.D.C. 1994).[9]

The D.C. Court of Appeals has held that "the sweep of the 'transacting any business' provision of D.C. Code 1973, section 13-423(a)(1), covers any transaction of business in the District of Columbia that can be reached jurisdictionally without offending the due process clause." *Mouzavires v. Baxter*, 434 A.2d 988, 993 (D.C. 1981); *see also Koteen v. Bermuda Cablevision*, 913 F.2d 973, 974 (D.C. Cir.1990).  Whether the statute can reach the conduct at issue thus depends on

---

[8] The Supreme Court has explained that the forum state's long-arm statutes control amenability to suit in the federal courts (in the absence of a federal statute authorizing service of process on an out-of-state defendant).  *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987).

[9] The District of Columbia's general jurisdiction statute, D.C. Code § 13-334(a), authorizes courts to exercise general jurisdiction over corporations as to claims not arising from the corporation's conduct in the District, where the corporation "does business" and has contacts within the District  "so continuous and systematic that it could foresee being haled into court in the District of Columbia."  *AGS Int'l Servs. v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 74 (D.D.C. 2004).  The FDIC does not allege that the Noteholders have the type of "continuous and systematic" contacts with D.C. that would justify general jurisdiction.  Rather, the FDIC must rely on the specific personal jurisdiction statute in D.C. Code § 13-423, which allows only those claims that arise from the corporation's contacts with the forum.

whether defendants had sufficient contacts with the District of Columbia such that traditional notions of fair play and substantial justice are not offended by requiring the parties to defend their case in the forum state. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980); *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The Supreme Court has explained that personal jurisdiction over a defendant does not violate due process if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

The FDIC argues that the D.C. Court has personal jurisdiction over the Noteholders because they "purposefully have availed themselves of the privilege of litigation in the District of Columbia for over three years" and thus "should reasonably anticipate being haled into court in the District of Columbia."  FDIC's Br. at 11.  But these actions could only create personal jurisdiction for claims that *arise from* the litigation in the D.C. Court.  *See* D.C. Code § 13-423(a)(1)("[a] District of Columbia court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim for relief arising from the person's transacting any business in the District of Columbia"); *Novak-Canzeri v. Saud*, 864 F. Supp. 203, 206 (D.D.C.1994) (under Section 13-423(b), "[t]he claim itself must have arisen from the business transacted in the District or there is no jurisdiction").  For example, the FDIC cites several cases where litigation in a forum provided a basis for subsequent personal jurisdiction over the litigating party—but each of these cases were actions for fees brought by a lawyer who had performed his services in the jurisdiction where personal jurisdiction was challenged.  *See Investigative Group, Inc. v. Brooke Group Ltd.*, 1997 WL 727484 (S.D.N.Y. Nov. 21, 1997); *Mitrano v. Hawes*, 377 F.3d 402, 407 (4th Cir. 2004); *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42 (1st Cir. 2002).  Such fee actions clearly

12

arose from the specific business transactions—the provision of legal services—within the jurisdiction.  In this case, I must determine whether the claims in the interpleader action arise from the litigation in the District of Columbia.

Initially, a central claim in the interpleader action related to a dispute over the meaning and scope of *NextBank I*—in particular, whether *NextBank I* precluded the Noteholders from enforcing the ipso facto clause against NextCard.  *See NextBank II*, 2007 WL 214402, at *15 ("this Court has previously decided the central issue of the New York interpleader—whether the Master Indenture's ipso facto clause and its early amortization requirements are enforceable").  To the extent that the interpleader action directly implicated the D.C. Court's holding in *NextBank I* by seeking to relitigate an issue that had already been decided in that action, BNY could have reasonably anticipated being haled into court in the District of Columbia.

But that issue is not directly before me because the central issues in the interpleader have shifted.  In *NextBank II*, Judge Huvelle enjoined BNY and the Noteholders from seeking to enforce the ipso facto clause in this interpleader action.  *See* 2007 WL 273481, at *16.  Obedient to that injunction, the Noteholders no longer invoke the ipso facto clause, and now argue that they are entitled to the interpleaded funds because the Notes have become due and payable under their express terms.  "Because specific jurisdiction is based on the relationship between defendants' contacts and each particular claim, plaintiff's claims must be analyzed separately."  *Kroger v. Legalbill.com LLC*, 2005 WL 4908968, at *7 n.6 (D.D.C. Apr. 7, 2005).[10]  The Noteholders' present

---

[10] *See also Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) ("[T]hat the District Court has specific personal jurisdiction over a defendant as to a particular claim asserted by [plaintiff] does not necessarily mean that it has personal jurisdiction over that same defendant as to [plaintiff's] other claims.").

claim based on the maturity of the Notes is quite different from the ipso facto clause issue at the heart of *NextBank I* (and *NextBank II*). Judge Huvelle herself noted that the maturity claim "may present new issues and [the D.C.] Court may not enjoin future litigation regarding that claim." *NextBank II*, 2007 WL 214402, at *15. I conclude that the maturity claim is sufficiently distinct from the *NextBank I* litigation such that the FDIC could not have reasonably anticipated being haled into court in the District of Columbia on this issue, and that it would be unfair to do so.

This result is further bolstered by the fact that BNY was required by statute to litigate *NextBank I* in the District of Columbia (or Arizona). The D.C. long-arm statute and due process encompass "notions of fair play and substantial justice"; thus, courts consider whether a party's connections with a forum are "voluntary and deliberate, rather than fortuitous." *Investigative Group, Inc. v. Brooke Group Ltd.*, 1997 WL 727484, at *4 (S.D.N.Y. Nov. 21, 1997). In *NextBank I*, BNY was challenging the FDIC's denial of administrative claims and, under 12 U.S.C. § 1821 (d)(6)(A), that suit could only be brought in the District of Columbia (or Arizona, the district in which NextBank's principal place of business was located). Under these circumstances, it would not be fair for the D.C. Court to have personal jurisdiction over the Noteholders for claims that are not directly related to the *NextBank I* litigation itself (even if the claims are related to the same underlying transaction).[11]

---

[11] Furthermore, the judge-made "government contacts exception" precludes personal jurisdiction when a non-resident's only contact with the District of Columbia involves petitioning the federal government or federal agencies. *See, e.g., Zeneca Ltd. v. Mylan Pharms., Inc.*, 173 F.3d 829, 831 (Fed. Cir. 1999) ("petitioning the national government does not 'count' as a jurisdictional contact in the personal jurisdiction analysis"). The government contacts exception "is grounded in concerns regarding the First Amendment right to petition the federal government as well as the policy against creation of national supercourts in the District of Columbia." *Id.* The doctrine typically involves lobbying or regulatory filings, but has also been applied to litigation with a federal agency after requested relief from the agency has been denied. *See*

For these reasons, I conclude that the D.C. Court does not have personal jurisdiction over the

Noteholders with respect to the maturity claim, which is presently the central claim in the

interpleader.  That lack of jurisdiction precludes a transfer under § 1404(a).

**D.      Fairness and Convenience Factors**

Even if the D.C. Court had personal jurisdiction over the Noteholders, the FDIC has not

established that the fairness and convenience factors weigh heavily in favor of a transfer to the D.C.

Court.

The FDIC primarily argues that the interests of justice, trial efficiency, and Judge Huvelle's

familiarity with the applicable law justify a transfer to the D.C. Court.  These factors apply with

some force to the original focus of the interpleader—the enforceability of the ipso facto clause

against NextCard—and similar considerations motivated this Court's stay of the interpleader

proceedings pending Judge Huvelle's decision in *NextBank II*.  But these factors are much weaker

with respect to the Noteholders' maturity claim.  The present claims in the interpleader have nothing

to do with the ipso facto clause.  The Noteholders have been enjoined from further litigation based

on that theory, and they are obeying the injunction.  While Judge Huvelle has general familiarity with

the underlying securitization transaction, the maturity claim raises new issues that have never been

analyzed by the D.C. Court—as Judge Huvelle herself observed.  *See NextBank II*, 2007 WL 214402,

at *12 n.7, *15.  For example, Judge Huvelle's analysis in *NextBank I* focused primarily on federal

---

*Mallinckrodt Med., Inc. v. Sonus Pharms., Inc.*, 989 F. Supp. 265, 271 (D.D.C. 1998) (filing lawsuit in D.C. court to challenge FDA's decision to treat a product as a drug was not a sufficient basis for personal jurisdiction) ("[U]nder the government contracts exception, a person or entity that has unsuccessfully petitioned [a federal agency] . . . and then seeks redress before the federal or local courts in the District of Columbia is not thereby 'transacting business' for the purposes of the long-arm statute.").

law issues under FIRREA, while the Noteholders' present maturity claim is governed by New York state law.

The other relevant factors do not support a transfer to the D.C. Court. The operative facts regarding the present interpleader claims mainly occurred in New York: the assets are held here by BNY, the Noteholders' claim to the assets was made to BNY in New York, and the operative documents were apparently negotiated in New York. As for convenience to the parties, BNY and the Noteholders are based in New York, while the FDIC is located in Washington, DC—but also has an office in New York. The convenience of witnesses and the availability of process to compel attendance of unwilling witnesses do not support the FDIC because the current issues appear to be based on transaction documents, and the FDIC has not identified any witnesses it plans to call. *See* FDIC's Br. at 14 ("The FDIC Receiver . . . does not know what witnesses it may need to call."); *Am. Steamship Owners Mut. Prot. & Indem. Ass'n v. LaFarge N. Am., Inc.*, 2007 WL 214408, at \*6 ("When a party seeks the transfer on account of the convenience of the witnesses under § 1404(a), [it] must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover."). The relative ease of access to sources of proof is also of little significance because the present claims turn on transaction documents that can easily be provided to either forum.

In sum, the FDIC has not met its burden of clearly establishing that transfer to the D.C. Court is appropriate.

## III. CONCLUSION

For the foregoing reasons, interpleader defendant FDIC's motion to transfer venue is denied.

Chambers will arrange a telephone conference with counsel to consider further scheduling

matters in this action, including the time within which the FDIC must answer BNY's complaint.

It is SO ORDERED.

Date:   New York, New York
        May 9, 2007

CHARLES S. HAIGHT, JR.<br>
SENIOR UNITED STATES DISTRICT JUDGE