USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 13/3/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
THE BANK OF NEW YORK, in its capacity as :
Indenture Trustee of the NextCard Credit Card :
Master Note Trust, :
 :
              Interpleader Plaintiff, :   06 Civ. 13388 (CSH)
 :
      -against- :
 :
FIRST MILLENNIUM, INC., MILLENNIUM :   MEMORANDUM OPINION
PARTNERS, L.P., RMK ADVANTAGE FUND, :   AND ORDER
and FEDERAL DEPOSIT INSURANCE :
CORPORATION, :
 :
              Interpleader Defendants. :
------------------------------------------------------------ x

HAIGHT, Senior District Judge:

      In this interpleader action, several groups of investors and the Federal Deposit Insurance Corporation ("FDIC") assert competing claims to funds held by The Bank of New York ("BNY"). BNY holds those funds in its role as Indenture Trustee of the NextCard Credit Card Master Note Trust ("NextCard"), a trust that was established by NextBank, N.A. ("NextBank") as part of a securitization transaction. The investors—First Millennium, Inc., Millennium Partners, L.P. (together, "Millennium"), and RMK Advantage Fund ("RMK")—claim they are entitled to the funds because they hold notes issued by NextCard that have matured and become due and payable, but have not been fully paid. The FDIC claims that it is entitled to funds held by BNY based on its rights as the receiver of NextBank. In addition, the FDIC has asserted certain counterclaims against BNY. Those counterclaims are the subject of two present motions: BNY's motion for judgment on the pleadings and the FDIC's motion for summary judgment. This Opinion resolves those motions.

# I. BACKGROUND

## A. The Securitization Transaction

### 1. Basic Structure

This action has its genesis in a securitization transaction undertaken by NextBank, a national banking association that issued consumer credit cards. In basic terms, NextBank "created a trust, transferred its receivables to this trust, ordered the trust to sell notes to investors, and used the proceeds to pay merchants for charges by credit card holders"; the trust then used receivables to repay the investors. *Bank of New York v. FDIC*, 453 F. Supp. 2d 82, 85-87 (D.D.C. 2006) ("*NextBank I*"). This securitization transaction was executed through a set of documents, including the Master Indenture, Indenture Supplements, and the Transfer and Servicing Agreement. Under these documents, NextBank (as "Transferor") transferred its receivables to NextCard, a Delaware statutory business trust. The trust (also referred to as the "Issuer") sold asset-backed notes (the "Notes") to investors (the "Noteholders"). In 2000 and 2001, the Issuer issued two series of notes: the 2000-1 Series Notes and the 2001-1 Series Notes. Each series included four classes of notes (Classes A, B, C, D) with differing levels of risk—from Class A, the lowest risk, to Class D, the highest risk. Lower risk notes had higher priority of repayment, while higher risk notes offered higher interest rates. The Noteholders' loans were secured by collateral. BNY acts as Indenture Trustee of the trust, and represents the interests of the Noteholders in that capacity.

Under the transaction, the NextCard trust owned the credit card "receivables" meaning the amounts owed by borrowers to pay off their NextBank credit card bills. Under the transaction documents, certain of these collections were allocated and distributed to Noteholders as payments of interest and principal. In addition, NextBank was entitled to receive distributions of Transferor

2

Interest from the collections.

**B.       Subsequent Developments**

Unfortunately, the transaction did not proceed as the participants had hoped. On February 7, 2002, the FDIC was appointed as NextBank's receiver because "NextBank's undercapitalization and practice of extending credit to subprime borrowers had put the bank at risk for failure." *NextBank I*, 453 F. Supp. 2d at 85. The FDIC eventually closed the credit card accounts, and credit card holders paid down their existing balances. Class A and Class B Noteholders were fully repaid principal and interest. Class C and Class D Noteholders continued to receive interest payments; but due to substantial charge-offs, Class C Noteholders were repaid only about half their principal and Class D Noteholders were not repaid any principal. *NextBank I*, 453 F. Supp. 2d at 91. The amount of unpaid initial principal on the Series 2000-1 and Series 2001-1 Class C Notes is about $70 million, and on the Series 2000-1 and Series 2001-1 Class D Notes is $42 million—for a total unpaid initial principal of about $112 million.

**C.       Procedural History**

**1.        The D.C. Conversion Suit (*"NextBank I"*)**

After becoming NextBank's receiver in 2002, the FDIC opted to disregard an ipso facto clause in the Indenture (which would have triggered early amortization based on NextBank's receivership), and maintained that it was entitled to do so under the Financial Institutions Reform Recovery and Enforcement Act ("FIRREA"). The Noteholders contended that the FDIC had improperly deprived them of funds to which they were entitled. After administrative claims to the FDIC were largely denied, BNY commenced suit against the FDIC on June 5, 2003 in the United States District Court of the District of Columbia (the "D.C. Court"), seeking a judgment (on behalf

3

of the Notcholders) for conversion of funds. That action involved several claims and counterclaims; however, Count Two (for Transferor Interest) was dismissed, and all other claims (including Count Three for Transferor Interest) and counterclaims were resolved through a July 27, 2005 settlement agreement except for Count Six, a claim for conversion related to the FDIC's failure to recognize the ipso facto clause in the Indenture. On September 27, 2006, Judge Huvelle of the D.C. Court granted judgment on Count Six in favor of the FDIC, finding that the ipso facto clause was void and unenforceable under FIRREA.[1] *NextBank I*, 453 F. Supp. 2d 82. BNY appealed the judgment.

## 2. The New York Interpleader Action

BNY, facing threats of litigation based on competing claims to the funds it held, commenced this interpleader action on November 16, 2006 in New York state court. As the D.C. Circuit described: "[T]he notcholders directed the Bank of New York (1) to exercise control over the receivables to repay the Notes and (2) to sue the trust for amounts outstanding on the Notes. The noteholders threatened to sue the Bank of New York if it did not comply. In turn, citing the district court's decision [*NextBank I*], the FDIC threatened to sue the Bank of New York if it did comply. The Bank of New York filed an interpleader action in New York state court seeking resolution of the conflicting claims to the receivables." *Bank of New York v. FDIC*, 508 F.3d 1, 4 (D.C. Cir. 2007). On the following day, the FDIC filed an action in the D.C. Court ("*NextBank II*") alleging that BNY's New York interpleader action was an improper attempt to relitigate issues that had already been decided in *NextBank I*, and seeking an injunction against such relitigation.

---

[1] The D.C. Court's ruling in *NextBank I* turned on whether NextBank had "entered into" the Master Indenture, as FIRREA grants the FDIC the power to enforce contracts entered into by the failed depository institution notwithstanding acceleration provisions in the contract based on receivership.

4

Millennium filed a motion for summary judgment in the New York state court interpleader action, arguing that it was entitled to the receivables because the ipso facto clause could be applied against the Issuer. The FDIC then removed the interpleader action to this Court. On December 21, 2006, this Court granted a limited stay of the interpleader action until Judge Huvelle's decision in *NextBank II*. This Court concluded that considerations related to the proper and efficient and prompt administration of justice justified a stay until Judge Huvelle determined whether claims in the interpleader action had already been decided by *NextBank I*.

### 3. The D.C. Injunction Action ("*NextBank II*")

As noted earlier, the FDIC filed an action in the D.C. Court on November 17, 2006 alleging that claims in the New York interpleader action had already been decided in *NextBank I*, and seeking an injunction against relitigation of those issues. On January 29, 2007, Judge Huvelle issued a decision granting the FDIC's motion for judgment. *FDIC v. Bank of New York*, 479 F. Supp. 2d 1 (D.D.C. 2007) ("*NextBank II*"). The D.C. Court held that *NextBank I* had already determined that FIRREA barred enforcement of the ipso facto clause against not just the FDIC, but also NextCard. *Id.* at 18. Judge Huvelle explained: "Because this Court decided in *NextBank I* that the Master Indenture's ipso facto clause was void, and therefore unenforceable by any party, and that the FDIC is excused from making accelerated payments to the Trust, there can be no basis for arguing that the Trust should make accelerated payments to the Noteholders. Therefore, collateral estoppel forecloses the Noteholders' present theory of entitlement to the NextBank receivables." *Id.* The D.C. Court ruled that the FDIC was entitled to monthly distribution payments of Transferor Interest, and the court enjoined BNY and the Noteholders from "relitigating the issue of whether early amortization under the Master Indenture's ipso facto clause is enforceable." *Id.* at 19-20. Thus, the

5

D.C. Court enjoined the Noteholders from seeking to enforce the ipso facto clause in any manner in this interpleader action. However, the D.C. Court also noted that the Noteholders' claim based on the maturity of the Notes was "not before [the D.C.] Court" and that "[t]o the extent that this alternative claim has been raised in the interpleader, it may present new issues and [the D.C.] Court may not enjoin future litigation regarding that claim." *Id.* at 15 n.7, 20. BNY also appealed Judge Huvelle's order and judgment in *NextBank II*.

### 4. The D.C. Circuit Decision

On November 13, 2007, the D.C. Circuit issued an opinion affirming the judgments of the D.C. Court in *NextBank I* and *NextBank II*. *Bank of New York v. FDIC*, 508 F.3d 1 (D.C. Cir. 2007). With respect to *NextBank I*, the D.C. Circuit held: "Because NextBank entered into the Master Indenture by agreeing to undertake rights and obligations, the FDIC validly enforced that contract notwithstanding the ipso facto clause." *Id.* at 6. With respect to *NextBank II*, the D.C. Circuit held: "Judge Huvelle, in her merits decision in 2006, determined that the FDIC validly enforced the transaction documents notwithstanding the ipso facto clause. In other words, it was proper for the transactions to continue as if the acceleration clause had no effect. Given this ruling, there is no room for argument that the trust could be liable for failure to give effect to the acceleration clause." *Id.* at 7.

### 5. Current Issues

The interpleader claimants continue to dispute entitlement to the funds held by BNY. The Noteholders no longer invoke the ipso facto clause, but now argue that they are entitled to the interpleaded funds because the Notes have matured and become due and payable under their express terms. Millennium/RMK and the FDIC's cross-motions for summary judgment regarding the

interpleader assets beyond the Spread Account are pending before the Court.

In addition, the FDIC has brought counterclaims against BNY, claiming that BNY is liable for: (1) violating the transaction documents, (2) violating the July 27, 2005 settlement agreement, (3) violating court orders in *NextBank I*, and (4) abusing judicial process. As the measure of damages for these counterclaims, the FDIC seeks to recover attorneys' fees and litigation expenses it has incurred since November 16, 2006 for this action and the related litigation in the District of Columbia. BNY moves for judgment on the pleadings on the counterclaims, while the FDIC moves for summary judgment. This Opinion resolves those motions.

## II. DISCUSSION

### A. Standard of Review

BNY has moved for judgment on the pleadings on the FDIC's counterclaims. Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). Thus, the claim must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (setting forth standard for Rule 12(b)(6)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." *Id.* at 1964-65 (internal quotation marks omitted). In assessing the motion, "the district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor," *Patel*, 259 F.3d at 126; however, "general, conclusory allegations need not be credited . . . when they

7

are belied by more specific allegations of the complaint," *Ginsberg v. Gov't Props. Trust, Inc.*, 2007 WL 2981683, at *17 (S.D.N.Y. Oct. 11, 2007) (citation and internal quotation marks omitted). "The court may also consider documents incorporated into the complaint by reference." *Id.*

The FDIC has moved for summary judgment on its counterclaims. Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

## B. The FDIC's Counterclaims

The FDIC asserts that it was entitled to the Transferor Interest under the terms of the transaction documents, the terms of the July 27, 2005 settlement agreement, and the D.C. Court's orders and judgment in *NextBank I*. The FDIC alleges that BNY therefore breached the transaction documents, breached the settlement agreement, and violated court orders when it: followed the Notcholders' instructions and "seize[]d the funds owed to the FDIC Receiver" on November 14, 2006, Countercl. ¶ 36; "failed to pay the Transferor Interest" to the FDIC Receiver," *id.* at ¶ 49; "prevented the FDIC Receiver from orderly winding down the affairs of NextBank and the Trust, *id.* at ¶ 40; refused to permit the FDIC to "dissolve the Trust and to sell and transfer the Receivables

8

on or soon after the final maturity date of April 16, 2007 . . . because this case was pending," *id.* at ¶ 41; and failed to give the FDIC "all right, title, and interest in the remaining Receivables on April 16, 2007 as part of the Transferor Interest," *id.* at ¶ 42. In addition, the FDIC alleges that BNY "misused judicial process by filing this interpleader action to allow it to continue holding the Transferor Interest and withholding payment to the FDIC Receiver," *id.* at ¶ 64, and that BNY "intended to harm the FDIC Receiver by seizing the Transferor Interest without proper excuse or justification," *id.* at ¶ 63.

## C.  Analysis

BNY contends that the FDIC's counterclaims are fundamentally flawed, as a matter of law, because an interpleader plaintiff cannot be held liable for the proper commencement—and maintenance—of an interpleader action. *See United States Trust Co. v. Alpert*, 10 F. Supp. 2d 290, 293 (S.D.N.Y.1998) (upholding magistrate judge's conclusion that "because the plaintiff Trustees acted within the rights granted to them by law in bringing their interpleader action, no cause of action arises from their commencement of this action"); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente*, 2001 WL 11070, at *6 (S.D.N.Y. Jan. 4, 2001) (rejecting certain counterclaims against interpleader plaintiff because "proper commencement of the interpleader action cannot create liability"). BNY's argument turns on two issues: (1) whether BNY properly commenced an interpleader action, and (2) if so, whether the FDIC's counterclaims are based on actions separate from BNY's commencement and maintenance of the interpleader action.

### 1.  Was the Interpleader Action Properly Commenced?

The FDIC claims that the interpleader action was not properly commenced: it alleges that BNY "misused judicial process by filing this interpleader action," and that BNY "seiz[ed] the

9

Transferor Interest without proper excuse or justification." Countercl. ¶¶ 63-64.

As noted, BNY filed its interpleader action in New York state court. The New York interpleader statute provides, in relevant part:

> A stakeholder is a person who is or may be exposed to multiple liability as the result of adverse claims. A claimant is a person who has made or may be expected to make such a claim. A stakeholder may commence an action of interpleader against two or more claimants.

N.Y. C.P.L.R. § 1006(a).

The pleadings make clear that BNY faced competing claims from Millennium and the FDIC to the receivables. The FDIC's counterclaims refer to a letter dated November 13, 2006 from Millennium's counsel to BNY. In that 15-page letter, counsel for Millennium directed BNY to issue a notice of default, accelerate the Notes, seize the receivables, and use them to repay the Noteholders; and it argued that such instructions were consistent with both *NextBank I* and the transaction documents. Furthermore, Millennium stated:

> The failure by the Indenture Trustee to follow the Directions set forth in the Instruction Letter will cause severe and irreparable harm to the Noteholders. . . . Millennium believes that it (and all of the Noteholders) will receive full or close to full recovery on the Notes if the Indenture Trustee takes the Directions. Millennium believes that the Indenture Trustee should be responsible for any unpaid principal and interest on the Notes if the Indenture Trustee fails to follow the Instruction Letter—and Millennium may pursue remedies against the Indenture Trustee for such failure.

Decl. of H. Stephen Harris in Supp. of BNY's Mem. of Law in Opp'n to the FDIC Receiver's Mot. for a Stay, Ex. 3 at 14. After BNY issued a notice of default, as directed by Millennium, the FDIC responded in a letter dated November 15, 2006:

> As BONY and the Noteholders are well aware, that Notice has no effect for reasons explained by the federal court in its recent decision and judgment against BONY. *See* [*NextBank I*]. . . . If BONY or the Noteholders attempt

10

to take further action on the Notice of Default or otherwise take funds not due
to them, the FDIC Receiver will seek judicial intervention, as well as
attorneys' fees and costs for having to take such action.

*Id.*, Ex. 5. Thus, it is clear that BNY faced "adverse claims" to the interpleader funds from Notcholders and the FDIC prior to BNY's commencement of the interpleader action.

Nonetheless, the FDIC claims that BNY "had the right under the Master Indenture and the obligation under contracts and court orders to refuse the Notcholders' November 2006 instructions." FDIC Countercls. Reply Br. at 5. In other words, the FDIC seems to argue that, even though the FDIC was faced with competing claims, it was obliged to pay the Transferor Interest to the FDIC (and to disregard the instructions of the Notcholders) due to the strength of the FDIC's claims to the funds. But this argument misapprehends the nature of the interpleader remedy:

> The availability of the interpleader remedy, however, is not dependent on the merits of the claims asserted against the stakeholder. The mere threat of future litigation is a sufficient basis for interpleader. Moreover, a party is not required to evaluate the merits of conflicting claims at its peril; rather, it need only have a good faith concern about duplicitous litigation and multiple liability if it responds to the requests of certain claimants and not to others.

*Sotheby's Inc. v. Garcia*, 802 F. Supp. 1058, 1065 (S.D.N.Y. 1992) (internal quotations and citations omitted).[2] Notwithstanding the FDIC's general allegation that BNY intended to harm the FDIC by seizing the Transferor Interest "without proper excuse or justification," Countercl. ¶ 63, the specific allegations and documents in the pleadings make clear that BNY faced adverse claims and the threat of multiple liability relating to the interpleader assets. If BNY used the receivables to pay the Noteholders, it faced a lawsuit from the FDIC; but if BNY used the receivables to pay Transferor

---

[2] Thus, the fact that Millennium's initial claim to the interpleader funds—which relied on a fine distinction between application of the ipso facto clause against the FDIC and against the Issuer— was later squarely rejected by the D.C. Court and the D.C. Circuit did not render BNY's commencement of the interpleader action improper.

11

Interest to the FDIC, it faced a lawsuit from the Noteholders. Under these circumstances, the commencement of the interpleader was proper. For these reasons, the FDIC has not alleged facts that plausibly indicate abuse of judicial process, and that counterclaim must be dismissed.

2. **Are the FDIC's Counterclaims Based on Actions Apart from BNY's Commencement and Maintenance of the Interpleader?**

Although the proper commencement of an interpleader action cannot itself give rise to liability, "independent" claims for relief against the interpleader plaintiff may form proper counterclaims. *See, e.g., Wayzata Bank & Trust Co. v. A & B Farms*, 855 F.2d 590, 593 (8th Cir. 1988) (affirming judgment on counterclaim asserting breach of fiduciary duty against interpleader plaintiff for breaching contract by accepting unauthorized diminution of a fund; this breach occurred before, and was separate from, the filing of the interpleader). Such actions must be based on wrongful conduct independent from the filing of an interpleader, or the retention of interpleaded assets pending direction from the court.

In this case, the FDIC contends that its counterclaims "are based not on the mere fact that BONY filed this action, but on BONY's violation of the orders of the D.C. District Court and its repeated breaches of the terms of the Transaction Documents and the Settlement Agreement between it and the FDIC Receiver." FDIC's Countercls. Opp'n Br. at 10. But the specific ways in which the FDIC alleges that BNY violated *NextBank I*, the transaction documents, and the settlement agreement—by "seizing" the interpleader funds and refusing to distribute or turn over the receivables to the FDIC while the interpleader action was pending—cannot be distinguished or separated from the commencement and maintenance of the interpleader action. BNY could not have commenced the interpleader without "seizing" and holding the interpleader assets. And while that interpleader

12

was pending, BNY could not distribute funds from the interpleader assets without an order from this Court. Thus, the counterclaims based on breach of the transaction documents, breach of the settlement agreement, and violation of court orders all fail as a matter of law and must be dismissed.[3]

## III. CONCLUSION

For the above reasons, BNY's motion for judgment on the pleadings on the FDIC's counterclaims is granted, and the FDIC's motion for summary judgment on its counterclaims is denied.

It is SO ORDERED.

Dated: New York, New York
March 28, 2008

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] Because the counterclaims are dismissed for the reasons described in text, I need not address BNY's additional argument that the FDIC's attempt to recover attorneys' fees as a result of BNY's conduct in bringing the interpleader action is barred by *res judicata* because the FDIC already sought to recover those fees —without success— in *NextBank II*, for essentially the same conduct at issue here.